UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. GUADALUPE REYES SANTOS,<br>Petitioner,<br>v.<br>FIELD OFFICER DIRECTOR THOMAS GILES, et al.,<br>Respondents. | Case No. 5:26-cv-06410-PD<br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br>**A# 222-570-773** |

J. Guadalupe Reyes Santos ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, along with an ex parte application for a temporary restraining order. Dkt. Nos. 1, 6. The Court issued a minute order converting the temporary restraining order to a motion for preliminary injunction and set a briefing schedule. Dkt. No. 7. The Court has considered the Petition, the motion for a temporary restraining order, Respondents' opposition to temporary restraining order and response to Petition, and Petitioner's reply. Dkt. Nos. 1, 6, 9, 10.

## I. Background

Petitioner is a forty-two-year-old native and citizen of Mexico who entered the United States in 2004 without inspection and has lived in the country continuously for twenty-two years. Dkt. No. 1, Petition ¶¶ 1, 17. Petitioner has never been arrested or charged with any crime. *Id.* ¶ 19; Dkt. No. 1-1 at 5. Before October 9, 2026, Petitioner never had any contact with immigration authorities. Petition ¶ 20. Petitioner and his wife have filed joint federal income tax returns every year from at least 2019 through 2025, reporting his name, home address, and occupation. *Id.* ¶ 21; Dkt. No. 1-1 at 25-45.

Since at least 2023, Petitioner has lived with his wife and four United States citizen children, ages thirteen, eleven, seven, and five in Jurupa Valley, California. *Id.* ¶¶ 22, 24. Before that, the family lived in Santa Ana, California. *Id.* ¶ 22. The family are registered parishioners of Sacred Heart Catholic Church in Jurupa Valley, where their children have been baptized and attend religious education. *Id.* ¶ 23; Dkt. No. 1-1 at 19. Petitioner's youngest child L.D.R. has autism spectrum disorder. Petition ¶ 25. In August 2023, a board-certified child neurologist evaluated him under the DSM-5 criteria and diagnosed him with Autism Spectrum Disorder, Level 2, requiring substantial support both in social communication and in restricted, repetitive behaviors. *Id.* He was also diagnosed with speech and language impairment, cognitive developmental delay, sensory processing difficulty, and insomnia. *Id.*; Dkt. No. 1 at 6, 13-17. Petitioner is central to L.D.R.'s care. He calms L.D.R. during crises, helps put him to sleep, takes him to therapy, and helps keep him safe. Petition ¶ 27. L.D.R. depends on routine, and his father is a central part of it. *Id.*

Petitioner has uncontrolled diabetes, for which he takes metformin. *Id.* ¶ 28. Petitioner's doctor has warned him that he must eat on a regular

schedule, follow a specific diet, and avoid stress, or he will need to begin insulin. *Id.* In detention, Petitioner cannot control when or what he eats. Since he was detained, he has been losing weight. *Id.*

Petitioner is a certified welder who has performed construction services for Sark Inc., a structural and ornamental steel contractor in Covina, since 2018, serving as a foreman and site leader. *Id.* ¶ 29. Sark describes his record as "stellar and unblemished," calls him "one of the most reliable, trustworthy, and honest individuals we have ever had the pleasure of working with," and states that it has an "urgent, ongoing need for his expertise and require[s] him back at work." *Id.*; Dkt. No. 1-1 at 5, 21. Petitioner has also provided welding services to Firestone Fabricators Inc. of Signal Hill for more than six years as an independent welder certified and licensed by the City of Los Angeles. Petition ¶ 30; Dkt. No. 1-1 at 23.

Petitioner's wife does not work outside the home. Petition ¶ 31. She cares full-time for the children, especially L.D.R. *Id.* Petitioner is the household's only earner, and the couple's joint tax returns list her occupation as "housewife." *Id.*; Dkt. No. 1-1 at 5, 25-46. Petitioner pays all the family's expenses, including rent, utilities, food, car payments and insurance, and the children's needs. Petition ¶ 32.

On October 9, 2026, shortly before 5:35 a.m., Petitioner was riding to work with his brother in the family car, on his usual route, when three vehicles of masked immigration officers stopped them in Jurupa Valley. Petition ¶¶ 2, 33, 34. Petitioner called his wife as the stop began. *Id.* ¶ 35. While on the phone, she heard an officer ask both men for photo identification, and Petitioner handed over his California driver's license showing his name and home address. The call then cut off. *Id.*; Dkt. No. 1-1 at 6.

The officers then demanded documents. *Id.* ¶ 36. When Petitioner and his brother took a moment to locate their documents, the officers pulled both

men out of the car, took their wallets, and searched them. *Id.* The officers did not show Petitioner a warrant or give him any document. *Id.* ¶ 37. No warrant, notice, or other paper concerning the arrest has been provided to Petitioner or his family. *Id.*; Dkt. No. 1-1 at 6. Petitioner states that no administrative warrant for his arrest existed when he was arrested, and officers did not know who Petitioner was before they stopped the car. *Id.* Petitioner states that before the arrest, the officers did not ask him about his home, family, work, or how long he had lived in the United States. *Id.* ¶ 38. Only after taking him to a facility in Adelanto did officers ask how many years he had been in the country and whether he had children. *Id.* Later, an interpreter asked whether he had a criminal record or any medical issues. *Id.*

According to Petitioner, the officers made no individualized, prearrest determination that Petitioner was likely to escape before a warrant could be obtained. *Id.* ¶ 39. Petitioner states he was on his way to work, in the family car, on his regular route, and had just produced a California driver's license establishing his identity and home address. *Id.* He did not flee, resist, or refuse to identify himself. *Id.* Petitioner's brother was also detained by immigration officers that day. *Id.* ¶ 40.

Petitioner has been detained since October 9, 2026. *Id.* ¶ 42. Petitioner received no notice and no opportunity to be heard before he was taken into custody. *Id.* ¶ 43. Petitioner has not been provided with any hearing. *Id.* ¶ 44. No immigration officer has made an initial custody determination under 8 C.F.R. § 287.3(d) or considered him for release under 8 C.F.R. § 236.1(c)(8), and he has received no Form I-286 Notice of Custody Determination. *Id.* He has had no bond hearing, no custody redetermination hearing before an immigration judge, and no other hearing before any neutral decisionmaker on whether his detention is justified. *Id.* No official has found that Petitioner poses a danger to the community or a risk of flight. *Id.* ¶ 45.

According to the Automated Case Information on the Executive Office for Immigration Review ("EOIR") website, Petitioner has a Master hearing on November 30, 2026. *See* https://acis.eoir.justice.gov/en/ (last visited November 13, 2026).

## II. Discussion

The Petition raises three claims: (1) Petitioner's seizure and continued confinement without notice or a pre-deprivation hearing violate the procedural component of the Fifth Amendment Due Process Clause; (2) Petitioner's warrantless arrest without any prearrest escape-risk determination, followed by detention without any of the post-custody process that 8 U.S.C. § 1226(a) and its regulations require, exceeds Respondents' statutory and regulatory authority; and (3) Petitioner's continued custody without a warrant or probable cause violates the Fourth Amendment. Dkt. No. 1 at 14-33.

Respondents oppose Petitioner's request for a temporary restraining order and assert that Petitioner was detained pursuant to an administrative warrant and is currently detained under 8 U.S.C. § 1226(a), and because he was never previously detained, his only potential available remedy is a bond hearing under § 1226(a), pursuant to *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). Dkt. No. 9. Respondents also argue as to the alleged Fourth Amendment violations, the remedy is not release but is instead suppression from any unlawful arrest. Respondents further argue that to the extent Petitioner has not requested a bond hearing, he has not exhausted his administrative remedies.

In Petitioner's reply, he argues that Respondents do not dispute that he holds a protected liberty interest, they do not address a single *Matthews*[1]

---

[1] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

factor, they do not contend that he was likely to escape before a warrant could issue, they do not mention the *Vasquez Perdomo*[2] injunction, and they fail to lodge a custody determination, because none has ever been made. Dkt. No. 10. Petitioner asserts that Respondents instead assert that he was arrested on an administrative warrant, but their records fail to show when the warrant was issued, and the I-213 Form is contradicted by the record on basic facts. Petitioner further argues that Respondents do not contest Ground One and that the Petition should be granted on that basis.

### A. Detention Under 8 U.S.C. § 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest"

---

[2] *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *20 (C.D. Cal. Sept. 2, 2026).

absent an emergency or other extraordinary circumstances. 8 C.F.R. § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (*i.e.*, a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained

pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**B. The Constitutional Grounding for § 1226(a) Procedures**

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)

(cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review

before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections

under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

### C. Respondents' Failure to Comply with § 1226(a)

Petitioner was detained on October 9, 2026, and filed this Petition nineteen days later, on October 28, 2026. Petitioner alleges that no warrant existed when officers seized him. Petition ¶¶ 37-38. Respondents contend that they had an administrative warrant. Dkt. No. 9 at 2; 9-2. Regardless of whether Respondents had an administrative warrant, Petitioner received no notice and no opportunity to be heard before he was taken into custody. No immigration officer made an initial custody determination under 8 C.F.R. § 287.3(d) or considered Petitioner for release under 8 C.F.R. § 236.1(c)(8), and he received no Form I-286 Notice of Custody Determination. Petition ¶ 44. Respondents failed to respond in substance to Petitioner's allegation that immigration officials failed to provide him with an initial custody determination.

Further, Petitioner has had no bond hearing, no custody redetermination hearing before an immigration judge, and no other hearing before any neutral decisionmaker on whether his detention is justified. *Id.* No official has found that Petitioner poses a danger to the community or a risk of flight. *Id.* ¶ 45.

Respondents provide no argument or evidence to rebut Petitioner's allegations. In the absence of contrary evidence, the Court takes Petitioner's allegation that he was detained without the process provided in § 1226(a) to be true.

Respondents also do not contest Petitioner's assertion that he is part of the Bond Eligible Class certified in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), and therefore, he should have been treated under § 1226(a) the moment he was detained. Petition ¶¶ 77-79. Beginning in July 2025, DHS took the position that individuals who entered without inspection were detained under § 1225 and were not entitled to the protections set out in § 1226(a). *See Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (describing policy). On July 30, 2026, the Ninth Circuit confirmed that those who entered without inspection are properly detained under § 1226, not § 1225, and are entitled to the protections of that statutory provision. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026).

Here, Petitioner was arrested after the *Rodriguez Vazquez* decision, and there is no evidence in the record showing that the procedures under § 1226(a) were followed. Petitioner's detention is accordingly unlawful. And by denying Petitioner the protections of § 1226(a), Respondents created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds.

For these reasons, the Court finds that Petitioner was detained in violation of his due process rights.

**D. Remedy**

Respondents argue that under Section 1226(a), Petitioner appears to be entitled to request and receive an initial bond hearing before an immigration judge pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2006). Dkt. No. 9 at 5-6. As many of the courts to address this issue have concluded, the failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) is unlawfulness that "cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.*, 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases); *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment.").

Petitioner has been confined for over a month without any determination that his detention was warranted. A bond hearing belatedly conducted at some point in the future is " 'no substitute' " for an initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Instead, because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this

violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

## III. Order

For the foregoing reasons, the Petition is GRANTED as to Count Two, and the remaining counts are dismissed without prejudice.

Petitioner J. Guadalupe Reyes Santos (A# 222-570-773) is **ordered released** within 24 hours of this Order on the same conditions of release that existed before his detention.

Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, are enjoined from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community.

At the time of release, Respondents are ordered to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report confirming Petitioner's release.

IT IS SO ORDERED.

DATED: November 13, 2026

Patricia Donahue
United States Magistrate Judge